United States District Court
Southern District of Texas
FILED

JUN 2 4 2004

Michael N. Milby
Clerk of Court

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

OSCAR MARTINEZ-LOPEZ,                )
                                     )
v.                                   )
                                     )
MARC MOORE, FIELD OFFICE DIRECTOR, and )
TOM RIDGE, SECRETARY, DEPARTMENT OF  )        **B-04-105**
     HOMELAND SECURITY, and          )
THE UNITED STATES OF AMERICA.        )
_____ )

**PETITION FOR WRIT OF HABEAS CORPUS
AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Oscar Martinez-Lopez, through counsel, files the instant Petition
for Writ of Habeas Corpus, under 28 U.S.C. §2241, and *INS v. St.
Cyr,* 121 S.Ct. 2271 (2001). In light of the recent decision in
*Zalawadia v. Ashcroft,* No. 03-30015 (5th Cir. June 4, 2004),
apparently limiting the remedies available in habeas corpus, Mr.
Martinez also files the instant action as a complaint for
injunctive and declaratory relief.

In short, Mr. Martinez challenges the conclusion that he is
ineligible for relief pursuant to (prior) §212(c) of the Act. In
addition to the constitutional questions raised in the Salazar-
Regino series, B-02-045, (No. 03-41492, 5th Cir. pending), the case
at bar raises two questions of first impression in this judicial
circuit, to wit, whether, in light of *St. Cyr, supra,* the time
restrictions on §212(c) relief imposed by the 1990 amendments apply
to offenses committed prior to enactment, and whether an LPR who
exercised his constitutional right to trial by jury can claim the
protection of the Court's holding in *St. Cyr.*

**I.   JURISDICTION AND VENUE**

1. Petitioner Oscar Martinez is under an administratively final
order of removal, (Petitioner's Exhibit A, herein incorporated by
reference). He is also an Order to report for deportation on July

9, 2004. (Petitioner's Exhibit B, herein incorporated by reference) He is in custody for habeas purposes because said orders place significant restrictions on his liberty not shared by the populace at large, within the meaning of *Jones v. Cunningham,* 371 U.S. 236,240 (1963).  The instant case raises issues over which the Fifth Circuit would not have jurisdiction under 8 U.S.C. §1252(a)(2)(C), *i.e.,* eligibility for relief from removal. *See, Flores-Garza v. INS,* 328 F.3d 797 (5th Cir. 2003); *Pequeno-Martinez v. Trominski,* 281 F.Supp.2d 902, 909-914 (S.D.Tx. 2003).

2.  Jurisdiction over Mr. Martinez' complaint for injunctive and declaratory relief is appropriate under 28 U.S.C. §1331 (federal question); §1346(a)(2) (action against an agency, and/or officers of the U.S.), and §1367 (supplemental jurisdiction).

3.   Respondents maintain offices, and Petitioner's removal proceedings were conducted, in Harlingen, Texas, within the jurisdiction of this Court.   Further, Petitioner resides in Mission, Texas, also within the jurisdiction of this Court.

## II.  THE PARTIES

4.  Oscar Martinez is a 52 year old native and citizen of Mexico. He has resided in the United States for thirty years, and became a permanent resident on or about May 9, 1983.

5.  Marc Moore and Tom Ridge are sued in their official capacities only, as Field Office Director of the San Antonio Office of the Bureau of Customs and Immigration Enforcement of the Department of Homeland Security, and as Secretary of said Department.

## III.  THE FACTS

6. Mr. Martinez has resided in the United States for thirty years. He has been disabled since 1997, but chose not to seek disability

benefits so that he would not become a public charge. Rather, he ekes out a living as best he can. His entire family is lawfully in the United States, and he no longer has anyone in Mexico. Given his poor health, and advanced age, it would be virtually impossible for him to support himself in Mexico.

7. Following a jury trial, Mr. Martinez was convicted in 1991 of conspiracy to possess, with intent to distribute, more than 100 kilograms of marijuana, which offense was concluded on May 5, 1990, and was sentenced to 85 months in prison. He had been offered a plea bargain which would have netting him approximately eight to twelve months, but chose to exercise his constitutional right to trial by jury on the advice of counsel, who assured him that he could win an acquittal, and told him nothing of the potential immigration consequences of losing the case.

8. On June 12, 1997, shortly after the effective date of IIRIRA, INS issued a Notice to Appear, alleging that Mr. Martinez had been convicted of an aggravated felony, and of an offense involving a controlled substance. The Judge found the charges to be sustained, and Mr. Martinez sought relief under §212(c) of the Act.

9. On June 6, 2003, an Immigration Judge in Harlingen, Texas, found Mr. Martinez removable on both charges, and further found that he was ineligible for any form of relief. Mr. Martinez filed a timely appeal to the Board of Immigration Appeals, which on May 13, 2004, affirmed, without opinion, the Decision of the Immigration Judge.

### IV.  THE CAUSES OF ACTION

Petitioner asserts that the deprivation of liberty complained of herein violates the laws and Constitution of the United States, as well as international law and treaty obligations with his native country of Mexico, which claims are cognizable in habeas corpus.

## A.  STATUTORY ISSUES RELATING TO RELIEF FROM DEPORTATION

Mr. Martinez contends that, under *INS v. St. Cyr, supra,* it was error to conclude that the 1990 amendment, precluding relief to one who served more than five years in prison, applied retroactively to cover offenses committed prior to enactment, and that said interpretation would render the statute void for vagueness as applied.  *See, Jordan v. DeGeorge,* 341 U.S. 223, 230-31 (1951):

> This Court has repeatedly stated that criminal statutes which fail to give due notice that an act has been made criminal before it is done are unconstitutional deprivations of due process of law.... It should be emphasized that this statute does not declare certain conduct to be criminal.  Its function is to apprise aliens of the consequences which follow after conviction and sentence of the requisite two crimes.

> Despite the fact that this is not a criminal statute, we shall nevertheless examine the application of the vagueness doctrine to this case. We do this in view of the grave nature of deportation.  The Court has stated that 'deportation is a drastic measure and at times the equivalent of banishment or exile * * *. It is the forfeiture for misconduct of a residence in this country. Such a forfeiture is a penalty.' ... We shall, therefore, test this statute under the established criteria of the 'void for vagueness' doctrine.

Mr. Martinez also urges that the alternative reason for finding that he was ineligible for a waiver under former §212(c) of the Act is also erroneous.  The LPR in *St. Cyr* pled guilty, while Mr. Martinez was found guilty, following a jury trial.  While the possibility that an LPR mighty rely on the availability of §212(c) relief in deciding to plead guilty underlay the Court's reasoning in *St. Cyr,* the **holding** of the case was that Congress did not state with sufficient specificity that the repeal of §212(c) was retroactive to overcome the presumption that new statutes are not applied retroactively.  The Court found retroactive effect, and concluded that Mr. St. Cyr was eligible for §212(c) relief.  If the

4

repeal of §212(c) was not retroactive, such relief must therefore be available regardless of whether one pled guilty, or, as here, exercised his constitutional right to a trial by jury. The possibility of genuine retroactive effect is a global issue, not one which must be determined on a case-by-case basis.

As Circuit Judge Calabresi opined, in conjunction with the dissent, in *Thom v. Ashcroft*, 369 F.3d 158, *14, N.6 (2nd Cir. 2004):

> Speaking only for myself: If I were judging on a clean slate, I would read the Supreme Court's seminal decision on civil retroactivity, *Landgraf v. USI Film Prods.*, 511 U.S. 244, 128 L. Ed. 2d 229, 114 S. Ct. 1483 (1994)-at a minimum-to say that, where Congress has not made its intent clear, courts should presume that any civil statute that would be considered *ex post facto* in the criminal context was meant to apply prospectively only. (This reading would be particularly appropriate in cases where, as here, the civil law in question imposes consequences very like those of criminal penalties. *See, e.g.*, *Fong Haw Tan v. Phelan*, 333 U.S. 6, 10, 92 L. Ed. 433, 68 S. Ct. 374 (1948) ("Deportation is a drastic measure and at times the equivalent of banishment or exile.").) Indeed, I believe *Landgraf* goes even further and that its anti-retroactivity presumption is triggered by statutes whose retroactive application, while not the equivalent of criminal *ex post facto,* nevertheless would run afoul of "familiar considerations of fair notice, reasonable reliance, and settled expectations." *Landgraf*, 511 U.S. at 270. And, I would expect that the Supreme Court's future decisions in this field will confirm such readings of *Landgraf*. I would, therefore, be very much inclined to agree with the dissent that the IIRIRA and the AEDPA do not bar Petitioner from 212(c) relief. I would be so inclined, that is, were it not for the fact that I am unconvinced by the dissent's ingenious interpretation of *Domond v. INS*, 244 F.3d 81 (2d Cir. 2001), and *Rankine*, 319 F.3d 93. Instead, I read those cases as foreclosing the argument that the conviction of an alien, without more, presents a retroactivity problem.

Here, there is "more." If required, Mr. Martinez could show genuine retroactive effect. He was unaware, at the time he decided to go to trial, that his failure to plead guilty, and/or that if he

were found guilty, and thereafter spent more than five years in prison, he would become deportable with no possibility of relief. In fact, these developments had not yet occurred. And although it is impossible to state with certainty what he would have done, had this information been available to him, in the absence thereof, he had no reason to forego his constitutional right to trial by jury.

### B.   SUBSTANTIVE DUE PROCESS

As a permanent resident, Mr. Martinez has a fundamental liberty interest in being able to live and work in the United States, and in remaining here with his family. *See, Landon v. Plasencia,* 459 U.S. 21,34 (1982), citing *Bridges v. Wixon,* 326 U.S. 135, 154 (1945); *Moore v. City of East Cleveland,* 431 U.S. 494,499 (1977), and *Stanley v. Illinois,* 405 U.S. 645, 651 (1972):

> Plasencia's interest here is, without question, a weighty one. She stands to lose the right "to stay and live and work in this land of freedom," ... Further, she may lose the right to rejoin her immediate family, a right that ranks high among the interests of the individual. ...

*Moore* and *Stanley* are both fundamental rights cases, involving family relationships. *Stanley* struck down a conclusive presumption similar to that involved herein, and *Moore* simply concluded that the interest advanced by the State was insufficient to justify the particular intrusion into the family unit. As a lawful permanent resident, Mr. Martinez enjoys the same Due Process rights, including substantive Due Process rights, to develop and enjoy intimate family relationships in the United States.

Mr. Martinez asserts that the combination of provisions enacted by IMMACT90 and IIRIRA, including the limitation on §212(c) relief for those who have spent five years or more in prison, together with the repeal of §212(c) of the Act, and its replacement with 8 U.S.C. §1229b(a), which contains an absolute prohibition on granting

6

discretionary relief to anyone convicted of an "aggravated felony," and the overly expansive definition of what constitute such "aggravated felonies," constitutes an unconstitutional "conclusive presumption" that all LPRs who have been convicted of any offense in that list are unworthy of being able to stay with their families in the United States. Similarly, by failing to permit any showing of countervailing equities, these provisions are unjustifiable, as they are not sufficiently narrowly tailored to meet a compelling state interest. *See, Nicholson v. Williams,* 203 F.Supp.2d 153,220-21, (EDNY 2002):

> Substantive due process comes into play where, regardless of the procedures followed, a governmental decision or action is so contrary to a fundamental right that it cannot be countenanced. *See Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (Substantive due process rights bar "certain government actions regardless of the fairness of the procedures used to implement them ...."). Substantive due process depends upon the outcome itself. [1]

The Substantive Due Process argument is particularly strong where, as here, Mr. Martinez has paid his taxes, and contributed to the Social Security and Medicare funds for many years, and will soon depend on the return of these payments for his very survival. *See,* Exhibit C, incorporated herein.

### C. PROCEDURAL DUE PROCESS
### Lack of "Fair Notice"

Mr. Martinez also asserts that the removal Order deprives him of Procedural Due Process. At the time of the offense, he was eligible for §212(c) relief. Had he known, or even guessed, that he would lose his eligibility unless he pled guilty, and spent fewer than

---

[1] Although *Nicholson* involved the removal of children from the parent, rather than, as would occur in the case at bar, the removal of the parent from the child, the principles are the same.

five years in prison, he would definitely have done so, since deportation, and permanent separation from his family, is, to him, a far more serious consequence any amount of time in prison.

Although not "punishment" for a criminal offense, deportation has long been recognized as a "penalty." *See, Reno v. American-Arab Anti Discrimination Committee,* 525 U.S. 471, 497-98 (1999), Justice Ginsberg, concurring in Part I and the result:

> As this Court has long recognized, "[t]hat deportation is a penalty - at times a most serious one - cannot be doubted." *Bridges,* 326 U.S., at 154, 65 S.Ct. 1443; see also *ibid.* (Deportation places "the liberty of an individual ... at stake.... Though deportation is not technically a criminal proceeding, it visits a great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom.")

Deportation then becomes an additional penalty, retroactively attached to the criminal offense by subsequent legislation, and/or by new interpretations of the various statutes involved. [2]

Therefore, the 1990 and 1996 amendments which render Mr. Martinez statutorily ineligible for §212(c) relief are unconstitutional as interpreted and applied herein. They retroactively make qualitative changes in the penalty imposed, in a wholly unexpected manner. *See,* Nancy Morawetz, "Rethinking Retroactive Deportation Laws and the Due Process Clause," NYU Law Rev., Vol 73, No. 1, April 1998. *See also, Arce v. Walker*, 139 F.3d 329,333-34 (2nd Cir. 1998):

> [T]he Due Process Clause protects against restraints or conditions of confinement that "exceed[ ] the sentence in ... an unexpected manner." *Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300; *see id.* at 479 n. 4, 115 S.Ct. at 2297 n. 4 (observing that proscribed conditions of confinement must be "qualitatively different from the punishment

---

[2] This is very similar to, and is reinforced by, the "void for vagueness" analysis of *Jordan v. DeGeorge, supra.*

characteristically suffered by a person convicted of crime, and [have] stigmatizing consequences." (citation and internal quotation marks omitted)); *see, e.g., Vitek v. Jones,* 445 U.S. 480, 493, 100 S.Ct. 1254, 1264, 63 L.Ed.2d 552 (1980) (holding that "involuntary commitment to a mental hospital is not within the range of conditions of confinement to which a prison sentence subjects an individual"); *Washington v. Harper,* 494 U.S. 210, 221-22, 110 S.Ct. 1028, 1036-37, 108 L.Ed.2d 178 (1990) (holding that inmate has a liberty interest under the Due Process Clause to refuse the involuntary administration of psychotropic drugs).

These protections exist even though deportation, a civil penalty, rather than criminal punishment, is involved.  As held in *BMW v. Gore*, 517 U.S. 559,574 (1996) (footnote 22 in original):

Elementary notions of fairness enshrined in this Court's constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment but also of the severity of the penalty that a State may impose. FN22

FN22. See *Miller v. Florida,* 482 U.S. 423 ...(1987) (*Ex Post Facto* Clause violated by retroactive imposition of revised sentencing guidelines that provided longer sentence for defendant's crime); *Bouie v. City of Columbia,* 378 U.S. 347... (1964) (retroactive application of new construction of statute violated due process); *id.,* at 350-355, 84 S.Ct., at 1701-1703 (citing cases); *Lankford v. Idaho,* 500 U.S. 110 ... (1991) (due process violated because defendant and his counsel did not have adequate notice that judge might impose death sentence). The strict constitutional safeguards afforded to criminal defendants are not applicable to civil cases, but the basic protection against "judgments without notice" afforded by the Due Process Clause, *Shaffer v. Heitner,* 433 U.S. 186, 217... (1977) (STEVENS, J., concurring in judgment), is implicated by civil *penalties.*

For an LPR such as Mr. Martinez, there is no question but that deportation is a "civil penalt[y]" imposed as a result of his "conviction.  It therefore violates Due Process, as a retroactive application of a new statute, as in *Bouie v. City of Columbia*. It

imposes a "civil penalt[y]" without prior notice, as in Shaffer v. Heitner.    And, as in *BNW v. Gore*, it confounds "[e]lementary notions of fairness" which "dictate that a person receive fair notice not only of the conduct that will subject him to punishment but also of the severity of the penalty" that may be imposed.

### D.    BREACH OF CONTRACT AND/OR UNJUST ENRICHMENT

Mr. Martinez also claims that a natural and foreseeable consequence of these provisions is to deprive long-term LPRs such as he of the return on the monies paid into their Social Security and Medicare accounts, on the basis of a single error that has no bearing on the purpose of these programs.    It is a "'long-enduring legal maximum that a party is presumed to intend the natural, foreseeable consequences of its acts.'" [*Local Union No. 948 v. NLRB*, 697 F.2d 113, 116 (6th Cir. 1982)] at 117 n.7 (quoting *NLRB v. Local 542, 542-A & 542-B, Int'l Union of Operating Eng'rs.*, 485 F.2d 387, 392 (3d Cir. 1973)), as quoted in *NLRB v. International Brotherhood of Electrical Workers, Local 575,* 773 F.2d 746,749 (6th Cir. 1985). See also, United States v. Texas Education Agency, 579 F.2d 910, 913 (5th Cir. 1978) ("an actor is held to intend the reasonably foreseeable results of his actions.").    Thus it must be presumed that Congress intended that even a single conviction such as involved herein would result in forfeiture of all Social Security and Medicare benefits, even for long-term LPRs, and notwithstanding a lifetime of productive and law-abiding behavior and payments into these programs, and that this forfeiture would occur regardless of whether it would deprive the person of the very means of survival.

This violates the implicit social contract underlying these programs, and results in unjust enrichment for the United States.

### E.    EQUAL PROTECTION

Mr. Martinez also contends that it violates Equal Protection to

make §212(c) waivers available to otherwise similarly situated LPRs who pled guilty to an offense, but not to one who exercised his constitutional right to trial by jury.

### F.   INTERNATIONAL LAW AND TREATY OBLIGATIONS

Finally Mr. Martinez urges that removal would violate international law. *See Beharry v. Reno,* 183 F.Supp.2d 584 (E.D.N.Y. 2002) (Where a statute appears to contradict international law, an appropriate remedy is to construe it so as to resolve the contradiction). [3]

Respectfully Submitted,

Lisa S. Brodyaga, Attorney
17891 Landrum Park Road
San Benito, TX 78586
(956) 421-3226                    Fed. ID.  1178
(956) 421-3423 (fax)             Texas Bar 03052800

### VERIFICATION

I, Lisa S. Brodyaga, hereby certify that I am familiar with Petitioner's case and that the facts as stated with respect thereto are true and correct to the best of my knowledge and belief.

_____
June 23, 2004

### CERTIFICATE OF SERVICE

I certify that a courtesy copy of the foregoing, with exhibits, was personally delivered to the office of the United States Attorney, at Brownsville, Texas, this 24th day of June, 2004.

_____

[3] *Beharry* concluded that relief was available where an offense was committed before IIRIRA, but the plea occurred after enactment.

11

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

OSCAR MARTINEZ-LOPEZ,                          )
                                               )
v.                                             )
                                               )
MARC MOORE, FIELD OFFICE DIRECTOR, and         )
TOM RIDGE, SECRETARY, DEPARTMENT OF            )
    HOMELAND SECURITY, and                     )
THE UNITED STATES OF AMERICA.                  )
_____        )

EXHIBIT "A" IN SUPPORT OF
PETITION FOR WRIT OF HABEAS CORPUS

**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5201 Leesburg Pike, Suite 1300*
*Falls Church, Virginia 22041*

**MARTINEZ-LOPEZ, OSCAR**
**208 AUSTIN ST.**
**RIO GRANDE CITY,  TX  78582-0000**

**Office of the District Counsel/HL**
**P.O. Box 1711**
**Harlingen, TX  78551**

**Name: MARTINEZ-LOPEZ, OSCAR**                    A38-101-791

**Date of this notice: 05/13/2004**

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Sincerely,

Frank Krider
Acting Chief Clerk

Enclosure

Panel Members:
        GRANT, EDWARD R.

**U.S. Department of Justice**                          Decision of the Board of Immigration Appeals
Executive Office for Immigration Review

**Falls Church, Virginia 22041**

File:   A38-101-791 - HARLINGEN                          Date:   MAY 1 3 2004

In re:  MARTINEZ-LOPEZ, OSCAR

IN REMOVAL PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT:  Pro se

ORDER:

PER CURIAM.  The Board affirms, without opinion, the results of the decision below.  The decision below is, therefore, the final agency determination.  *See* 8 C.F.R. § 1003.1(e)(4).

_____
FOR THE BOARD

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
Harlingen, Texas

File A 38 101 791                                    May 7, 2003

In the Matter of

OSCAR MARTINEZ-LOPEZ,          )          IN REMOVAL PROCEEDINGS
                               )
              Respondent       )

CHARGES:     Section 237(a)(2)(A)(iii) of the Immigration and
             Nationality Act; Section 237(a)(2)(B)(i) of the
             Immigration and Nationality Act.


APPLICATION: Section 212(c) of the Immigration and Nationality
             Act.


ON BEHALF OF RESPONDENT:          ON BEHALF OF SERVICE:

Jodi Goodwin, Esquire             Sean Clancy, Esquire
                                  Assistant District Counsel



## ORAL DECISION OF THE IMMIGRATION JUDGE

On July 9, 2002, the Board of Immigration Appeals

issued a decision in this case.  The Board of Immigration Appeals

vacated the Court's order of removal dated September 15, 1997,

and remanded the record for further proceedings consistent with

the Board's decision.  The Board in that case concluded that as

the record stood in the case as before the Board, there was no

showing that the respondent's conviction as alleged in the Notice

to Appear was final for Immigration purposes because the record

indicated that there may have been a direct appeal of that



jmp

conviction pending.   Therefore, the case was remanded to the
Court to conduct an evidentiary hearing regarding the finality of
the respondent's criminal conviction.

At a hearing held on March 13, 2003, respondent offered
into the record the decision and the judgment in the case of
United States of America v. Oscar Martinez-Lopez, which involved
the appeal of the criminal conviction as alleged in the Notice to
Appear.   That document was admitted into the record without
objection (Exhibit 5).  This document shows that the direct
appeal of the respondent's criminal conviction was dismissed, and
the judgment of the District Court which found respondent guilty
of the criminal offense was affirmed.

The Court will issue a new decision in this case
relating to the issues of removability and any potential relief
from removal.

The Notice to Appear in this case was issued on June
24, 1997, by the Immigration Service.   This was a superseding
Notice to Appear (Exhibit 2).  That Notice to Appear alleges that
respondent was admitted to the United States but that he is
deportable for the reasons stated in that document.   The Notice
to Appear specifically alleges that respondent is not a national
or citizen of the United States and that he entered the United
States at or near Roma, Texas, on or about May 18, 1983, as an
immigrant after being inspected by an Immigration officer.   The
Notice to Appear further alleges that on June 28, 1991,

A 38 101 791                    2                    May 7, 2003

jmp

respondent was convicted of conspiracy to possess with intent to distribute marijuana in an amount of more than 100 kilograms but less than 1,000 kilograms and that he was sentenced to 85 months in Federal prison by the United States District Court for the Southern District of Texas, McGowan Division, for violation of 21 United States Code, Sections 846, 841(a)(1) and 841(b)(1)(B). The Notice to Appear charges that respondent is subject to removal from the United States under Sections 237(a)(2)(A)(iii) and 237(a)(2)(B)(i) of the Immigration and Nationality Act (the Act). Respondent admitted the allegations in the Notice to Appear, which state that he is not a national or citizen of the United States and that he entered the United States at or near Roma, Texas, on or about May 18, 1983, being admitted at that time as an immigrant after being inspected by an Immigration officer. Further, the parties stipulated in this proceeding that the respondent is a native and citizen of Mexico.

Respondent denied Allegation 4 in the superseding Notice to Appear, which alleges that he was convicted on June 28, 1991, of conspiracy to possess with intent to distribute marijuana. Respondent also denied both charges of removability.

The Immigration Service offered into the record the record of conviction with respect to the conviction alleged at Allegation 4 of the superseding Notice to Appear. That document was admitted into the record without objection (Group Exhibit 3). A judgment in that case shows that respondent was found guilty on

A 38 101 791                3                May 7, 2003

jmp

Count 1 on March 4, 1991, after a plea of not guilty and that he was adjudged guilty of the offense of conspiracy to possess with intent to distribute more than 100 kilograms but less than 1,000 kilograms of marijuana. Respondent was sentenced for this offense to 85 months in the custody of the United States Bureau of Prisons to be in prison for that term.

Respondent filed an appeal of that criminal conviction. On May 25, 2000, the United States Court of Appeals for the 5th Circuit issued a decision stating that the respondent failed to demonstrate any error in connection with his conviction, and the judgment of the District Court in respondent's criminal case was affirmed. On June 16, 2000, the United States Court of Appeals for the 5th Circuit issued a judgment affirming the judgment of the District Court in respondent's criminal proceeding, and it was issued as a mandate (Exhibit 5). Accordingly, the Court concludes that respondent's conviction for conspiracy to possess with intent to distribute more than 100 kilograms but less than 1,000 kilograms of marijuana is a final conviction for Immigration purposes. The record contains clear and convincing evidence that the respondent is removable under both charges in the Notice to Appear. Thus, the respondent, after admission, has been convicted of a violation of a law of the United States relating to the controlled substance marijuana, which is a controlled substance as defined in Section 102 of the Controlled Substances Act, 21 United States Code Section 802, other than a single offense

A 38 101 791                    4                    May 7, 2003

jmp

involving possession for one's own use of 30 grams or less of
marijuana.  Further, respondent is removable under Section
237(a)(2)(A)(iii) of the Act because after admission, he has been
convicted of an aggravated felony as defined in Section
101(a)(43) of the Act.  Respondent's conviction for conspiracy to
possess with intent to distribute marijuana is an aggravated
felony pursuant to Sections 101(a)(43)(B) and 101(a)(43)(U) of
the Act.

Respondent selected Mexico as the country for removal
if removal is ordered.  The only relief from removal requested by
respondent in this proceeding is a waiver of removability under
Section 212(c) of the Act.

Section 212(c) of the Act was repealed by Section
304(b) of the Illegal Immigration Reform and Immigrant
Responsibility Act of 1996 (IIRIRA), which was enacted on
September 30, 1996.  Section 304(b), which repealed Section
212(c) of the Act, became effective on April 1, 1997, which is
known as the Title III-A effective date.  See IIRIRA Section
309(a).

Therefore, the general rule is that Section 212(c) is
not a form of relief from removal available in a removal
proceeding under Section 240 of the Act.  However, in the United
States Supreme Court decision in INS v. St. Cyr, 121 S.C. 2271
(2001), the Court held that Section 212(c) relief remains
available for aliens who are in a removal proceeding where the

A 38 101 791                    5                    May 7, 2003

jmp

convictions were obtained through plea agreements and where notwithstanding those convictions, the alien would have been eligible for Section 212(c) relief at the time of his plea under the law then in effect.  The Court concludes that respondent does not fall within the parameters of INS v. St. Cyr, supra, because his conviction was not obtained through a plea agreement.  The record of conviction in this case shows that respondent pled not guilty with respect to the offense for which he was ultimately convicted.  See Group Exhibit 3.  Therefore, respondent is not eligible to apply for a waiver of removability under Section 212(c) of the Act in this removal proceeding.

Even assuming arguendo that respondent falls within the parameters of INS v. St. Cyr, supra, he would still not be eligible to be considered for a waiver under Section 212(c) of the Act because he has served more than five years in prison based upon his conviction for the aggravated felony alleged in the superseding Notice to Appear in this case.  Thus, the parties have stipulated that respondent served time in prison from June 28, 1991, to May 31, 1997, for the offense alleged in the superseding Notice to Appear.  Section 212(c) of the Act, as it existed prior to its amendment by Section 440(d) of the Anti-Terrorism and Effective Death Penalty Act of 1996 and its repeal by Section 304(b) of the IIRIRA, stated that Section 212(c) shall not apply to an alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a

A 38 101 791                    6                    May 7, 2003

jmp

term of imprisonment of at least five years.  Therefore, even if the Court in this case were to apply the language of Section 212(c) of the Act as that statute existed at the time of his conviction for the crime alleged in the superseding Notice to Appear, respondent still would not be eligible for Section 212(c) relief.  The record shows that he did serve more than five years in prison for the aggravated felony alleged in the superseding Notice to Appear.  See <u>Matter of Davis</u>, 22 I&N Dec. 1411 (BIA 2000), affirmed 2003 Westlaw 289624 (Southern District of New York 2003).

Based upon all of the above, the Court concludes that respondent is not eligible to be considered for a waiver of removability under Section 212(c) of the Act.  Therefore, his request for a waiver of removability under Section 212(c) is pretermitted.

<u>ORDER</u>

IT IS HEREBY ORDERED that respondent be removed from the United States to Mexico pursuant to the charges of removability stated in the superseding Notice to Appear.

Dated this 7th date of May 2003.

HOWARD ACHTSAM
Immigration Judge
9/3/03

A 38 101 791                    7                    May 7, 2003

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

OSCAR MARTINEZ-LOPEZ,                    )
                                         )
v.                                       )
                                         )
MARC MOORE, FIELD OFFICE DIRECTOR, and   )
TOM RIDGE, SECRETARY, DEPARTMENT OF      )
     HOMELAND SECURITY, and              )
THE UNITED STATES OF AMERICA.            )
_____)

EXHIBIT "B" IN SUPPORT OF
PETITION FOR WRIT OF HABEAS CORPUS

U.S. Department of Justice
**Immigration and Naturalization Service**

**Notice to Obligor to Deliver Alien**

---

☒ To Obligor

☐ To Alien  (See Reverse of Form)

Date:   June 9, 2004

File:   A38 101 791

Name (s) of  Alien (s)
**Oscar MARTINEZ-Lopez**

**Jose Guadalupe Bautista**
**Rt. 37 Box 2225**
**Mission, TX 78572**

**TO OBLIGOR:**

Under the terms of the bond you posted for release of the above alien(s), the Immigration and Naturalization Service is making demand upon you to surrender the above alien(s):

☐ For a hearing at:         Date:   _____
                            Time:   _____
                            Place:  _____

☐ For an interview at:      Date:   _____
                            Time:   _____
                            Place:  _____

☒ For deportation or exclusion at:   Date:   **July 9, 2004**
                                     Time:   **10:00 A.M.**
                                     Place:  **DRO; 1717 Zoy Street; Harlingen, Texas 78552**

**Warning:**  Failure to surrender the alien(s) in accordance with this demand will result in BREACHING THE BOND and its FORFEITURE TO THE GOVERNMENT.

Very truly yours,

_Nail M. Delgado_  5 DDO

Marc J. Moore
Field Office Director/DRO

---

### CERTIFICATE OF SERVICE

This order and notice was served by me at _____ on _____
                                              (Location)                    (Date)

at _____ am/pm in the following  manner: _____
      (Time)

_____          Deportation Officer
(Signature of Officer/Employee)          (Title of Officer/Employee)

---

Form I-340 (rev. 5-02-95) N

CERTIFIED MAIL# 7160 3901 9844 4883 1659

*Tel. OSCAR MARTINEZ*
*(956) 735-1321*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION


OSCAR MARTINEZ-LOPEZ,                    )
                                         )
v.                                       )
                                         )
MARC MOORE, FIELD OFFICE DIRECTOR, and   )
TOM RIDGE, SECRETARY, DEPARTMENT OF      )
    HOMELAND SECURITY, and               )
THE UNITED STATES OF AMERICA.            )
_____)


EXHIBIT "C" IN SUPPORT OF
PETITION FOR WRIT OF HABEAS CORPUS



**APPLICATION FOR DISABLED PERSON IDENTIFICATION
PLACARD AND/OR DISABLED PERSON LICENSE PLATE**

VTR - 214 (Rev 9-99)
DHT #142347

**WARNING!   TRANSPORTATION CODE, §502.410, PROVIDES THAT FALSIFYING INFORMATION ON ANY REQUIRED STATEMENT
OR APPLICATION IS A THIRD-DEGREE FELONY.**

In accordance with Transportation Code, Chapters 502 and 681, application is hereby made for:

☐ Temporarily Disabled Person Placard (Fee $5.00)
☐ Two (2) Temporarily Disabled Person Placards (Fee $10.00)
☐ Permanently Disabled Person **Blue** (mobility-impaired) Placard (Fee $5.00)
☐ Two (2) Permanently Disabled Person **Blue** (mobility-impaired) Placards (Fee $10.00)
☐ Permanently Disabled Person **Red** (non-mobility-impaired) Placard (Fee $5.00)
☐ Two (2) Permanently Disabled Person **Red** (non-mobility-impaired) Placards (Fee $10.00)
☐ Disabled Person License Plate (Regular Registration Fee - also enclose current and/or previous year's license receipt)
☐ Disabled Person License Plate and
    ☐ Permanently Disabled Person **Blue** (mobility-impaired) Placard or
    ☐ Permanently Disabled Person **Red** (non-mobility-impaired) Placard
    (Regular Registration Fee + $5.00 placard fee - also enclose previous year's license receipt)
☐ Additional Set(s) of Disabled Person License Plates for specially equipped vehicles (Regular Registration Fee - also
    enclose previous year's license receipt) **NOTE:** If more than two (2) sets of plates are desired, attach additional
    vehicle information on a separate sheet.
☐ Disabled Person Personalized License Plates (Complete Form VTR-35A in addition to this form and submit both
    forms and $40.00 fee to the address indicated on the Form VTR-35A)

I, the undersigned, certify that I am ☐ temporarily disabled ☐ permanently disabled ☐ making application on
behalf of a temporarily or permanently disabled person and have read the instructions on the reverse side of this
application and fully understand the provisions of Transportation Code, Chapters 502 and 681, relating to Disabled
Person Identification Placards and License Plates.

| THIS BLOCK FOR TAX ASSESSOR-COLLECTOR USE ONLY |
|---|
| LICENSE PLATE NUMBER(S) ISSUED |
| DISABLED PERSON PLACARD(S) ISSUED (Circle One)   BLUE   RED |
| RECEIPT OF STATUTORY FEE HEREBY ACKNOWLEDGED |
| TAX COLLECTOR |
| COUNTY |
| BY: |
| DATE   DEPUTY |

*Martinez, Oscar Lopez*
APPLICANT'S NAME/INSTITUTION NAME    APPLICANT'S SIGNATURE/ADMINISTRATOR'S SIGNATURE    *11402704* DRIVER'S LICENSE or I.D. or DHS NUMBER    *5-24-2000* DATE

*208 Austin St - Rio Grande City TX 78582*
APPLICANT'S OR INSTITUTION'S STREET ADDRESS, CITY, STATE, AND ZIP CODE

### INFORMATION REQUIRED FOR ISSUANCE OF DISABLED PERSON LICENSE PLATES

| | YEAR MODEL | VEHICLE MAKE | VEHICLE IDENTIFICATION NUMBER | LICENSE PLATE NUMBER |
|---|---|---|---|---|
| 1 | | | | |
| 2 | | | | |

I, the undersigned, certify that I am the owner of the above described vehicle(s) or that the vehicle(s) is/are owned by an institution that qualifies for disabled person license plates. I further certify that the vehicle(s) is/are regularly operated by or for the transportation of the disabled person named in the Disability Statement below or operated by the qualified institution for transportation of a disabled resident of such institution.

VEHICLE OWNER'S NAME OR INSTITUTION NAME    VEHICLE OWNER'S OR ADMINISTRATOR'S SIGNATURE    DATE

### DISABILITY STATEMENT

**TO BE COMPLETED BY A PHYSICIAN LICENSED BY THE TEXAS STATE BOARD OF MEDICAL EXAMINERS, A PHYSICIAN LICENSED TO
PRACTICE MEDICINE IN A STATE ADJACENT TO TEXAS (ARKANSAS, LOUISIANA, NEW MEXICO, OR OKLAHOMA), OR A PHYSICIAN
PRACTICING MEDICINE IN A HOSPITAL OR OTHER HEALTH FACILITY OF THE VETERANS ADMINISTRATION**

I hereby certify that   *Oscar Martinez*   has a (check one): ☑ **mobility-related permanent disability,**
NAME OF DISABLED PERSON

☐ non-mobility-related permanent disability, or ☐ temporary disability (see back of application for disability definitions and additional information).

*05-24-00*    *Porfirio S. Rodriguez MD*    *F-2886*
DATE    NAME OF PHYSICIAN    PROFESSIONAL LICENSE NUMBER OF PHYSICIAN

*103 E Main*    *Rio Grande City*    *TX*    *78582*
STREET ADDRESS    CITY    STATE    ZIP CODE

Signature of Physician

On this date, *5 24 2000* , the above named physician, *Porfirio S. Rodriguez* , appeared before
me so that I could witness his/her signature. *Mary Ramirez*
SIGNATURE OF NOTARY

*Mary Ramirez*
PRINTED NAME OF NOTARY

SEAL

**MARY RAMIREZ**
**My Commission Expires**
**March 12, 2001**

I hereby certify that I am a notary in March 12, 2001, in *Starr* County My commission expires *3 12 2001*
DATE

**IMPORTANT!**   PHYSICIAN'S SIGNATURE MUST BE NOTARIZED UNLESS A SEPARATE WRITTEN <u>ORIGINAL</u> PRESCRIPTION
IS SUBMITTED ON A PRESCRIPTION FORM OR ON THE PHYSICIAN'S LETTERHEAD.

**\*\*\*\* Submit both copies of this application with applicable fees to the County Tax Assessor-Collector \*\*\*\***

Applicant  Original      Texas Department of Transportation • Vehicle Titles and Registration Division      County  Duplicate




## APPLICATION FOR DISABLED PERSON IDENTIFICATION PLACARD AND / OR DISABLED PERSON LICENSE PLATE

VTR - 214 ( Rev 9 - 97 )
DHT # 142347

**WARNING! TRANSPORTATION CODE, SECTION 502.410, PROVIDES THAT FALSIFYING INFORMATION ON ANY REQUIRED STATEMENT OR APPLICATION IS A THIRD - DEGREE FELONY.**

In accordance with Transportation Code, Chapters 502 and 681, application is hereby made for:

☐ Temporary Disabled Person Placard ( Fee $5.00 )
☑ Two ( 2 ) Temporary Disabled Person Placards ( Fee $10.00 )
☐ Permanent Disabled Person Placard ( Fee $5.00 )
☐ Two ( 2 ) Permanent Disabled Person Placards ( Fee $10.00 )
☐ Disabled Person License Plate ( Regular Registration Fee - also enclose previous year's license receipt. )
☐ Disabled Person License Plate and Permanent Disabled Person Placard
  ( Regular registration fee + $5.00 placard fee - also enclose previous year's license receipt. )
☐ Additional Set(s) of Disabled Person License Plates for specially equipped vehicles
  ( Regular registration fee - also enclosed previous year's license receipt. ) **NOTE*** If more than two
  ( 2 ) sets of plates are desired, attach another vehicle( s ) information on a separate sheet.
☐ Disabled Person Personalized License Plates ( Complete Form VTR - 35A in addition to this form
  and submit both forms and a $40.00 fee to the address indicated on the Form VTR - 35A. )

I, the undersigned, certify that I am ☑ temporarily ☐ permanently disabled and have read the instructions on the reverse side of this application and fully understand the provisions of Transportation Code, Chapters 502 and 681, relating to the Disabled Person Identification Placards and License Plates.

| THIS BLOCK FOR TAX ASSESSOR-COLLECTOR'S USE ONLY. |
|---|
| LICENSE PLATE NUMBER(S) ISSUED |
| DISABLED PERSON PLACARD(S) ISSUED |
| RECEIPT OF STATUTORY FEE HEREBY ACKNOWLEDGED. |
| TAX COLLECTOR |
| COUNTY |
| BY: |
| DATE              DEPUTY |

Oscar M. Lopez _____ Oscar Martinez Lopez _____ 12-3-97
APPLICANT'S NAME    APPLICANT'S SIGNATURE    TX D.L. OR TX I.D.NO.    DATE

Rt. 27 Box 2045 _____ Mission TX 78572
APPLICANT'S STREET ADDRESS, CITY, STATE, AND ZIP CODE

### INFORMATION REQUIRED FOR ISSUANCE OF DISABLED PERSON LICENSE PLATES :

1. _____
YEAR MODEL    VEHICLE MAKE    VEHICLE IDENTIFICATION NUMBER    LICENSE PLATE NO.

2. _____
YEAR MODEL    VEHICLE MAKE    VEHICLE IDENTIFICATION NUMBER    LICENSE PLATE NO.

I, the undersigned, certify that I am the owner of the above described vehicle( s ) and that the vehicle( s ) is / are regularly operated by or for the transportation of the disabled person named above.

_____
VEHICLE OWNER'S NAME    VEHICLE OWNER'S SIGNATURE    DATE

### DISABILITY STATEMENT
**TO BE COMPLETED BY A PHYSICIAN LICENSED TO PRACTICE MEDICINE IN THE STATE OF TEXAS**

I, a licensed physician, hereby certify that _Oscar M. Lopez_
(NAME OF DISABLED PERSON)

is currently "Disabled," as that term is defined by Transportation code, Section 681.001 ( see definitions on back of application ). I further certify that such disability is of a ☐ temporary nature or of a ☐ permanent nature continuing for the applicant's lifetime.

Dec-3-97 _ Fernando Ortegon MD _____ E-9500
DATE    NAME OF LICENSED PHYSICIAN    PROFESSIONAL LICENSE NUMBER OF PHYSICIAN

906 S-Bryan Suite 101 Mission Texas 78572
STREET ADDRESS    STATE    ZIP CODE

Signature of Licensed Physician _F. Ortegon MD._

On this date, _12-3-97_, the above licensed physician _Fernando Ortegon MD_, appeared before me so that I could witness his / her signature.

SEAL

JACQUELINE FLORES
Notary Public
STATE OF TEXAS
My Commission Expires 10-16-99

_Jacqueline Flores_
SIGNATURE OF NOTARY

_Jacqueline Flores_
PRINTED NAME OF NOTARY

I hereby certify that I am a notary in the State of Texas in _Hidalgo_ County. My commission expires _10-16-99_
DATE

**IMPORTANT:** SIGNATURE OF LICENSED PHYSICIAN MUST BE NOTARIZED UNLESS A SEPARATE WRITTEN ORIGINAL PRESCRIPTION IS SUBMITTED BY THE DISABLED APPLICANT.
All three copies of this application with the applicable fee( s ) must be submitted to the County Tax Assessor - Collector. ( See Instructions – Reverse Side )
Texas Department of Transportation, Vehicle Titles and Registration Division

Applicant's White Copy

**ED004**

# Mission Hospital
### INSTRUCTIONS TO PATIENTS
### CONCERNING AFTER EMERGENCY ROOM CARE

MARTINEZ.OSCAR
08/30/1951   52.   M   06/20/04
Sturdivant.Ted S MD. MBA. MPH

Name _Martinez Oscar_          E.R. No. _____ Date _6-21-4_

NOTE: The examination and treatment you have received in the Emergency Department have been rendered on an emergency basis only and are not intended to be an effort to provide complete medical care. Your own physician will receive a copy of your records (and test reports if he desires). It is impossible to recognize and treat all elements of injuryor illness in a single Emergency Department visit. Meanwhile, FOLLOW THE INSTRUCTIONS BELOW as indicated for you.

☐ 1.   WOUND REPAIR (Cuts, abrasions, burns): Keep wound and dressing clean. You may wash with soap and water after 24 hours. Drainage, fever, redness, swelling or pain may mean infection; immediate examination is advised.

☐ 2.   Return to the Doctor's Office for suture removal and/or dressing in ___ days. (Date: _____ Call for Appointment).

☐ 3.   SPRAINS, STRAINS, SEVERE CONTUSIONS: During first 24 hours apply ice intermittently in leakproof plastic bag to affected area. Elevation (pillows) is helpful. Limit or avoid use of affected area (sling/crutches) unless otherwise advised. After 24 hours apply heat (compresses or soaks) 2 or 3 times daily.

☑ 4.   PRESCRIPTIONS: Have these prescriptions filled by the pharmacy of your choice and take as directed. If you have been given medicine for pain, don't drive or use equipment because administered or prescribed drugs may cause drowsiness or slow reflexes for several hours.

☐ 5.   CASTS-SPLINTS: Pain, change of color, numbness, tightness or difficulty in moving fingers or toes may require immediate examination. A physician should decide when to remove cast or splint. Keep casts-splints dry.

☐ 6.   HEAD INJURY: Contact physician in these conditions: persistent or increasing headache, vomiting, unusual drowsiness or coma, convulsions, blurred or disturbed vision, unequal pupils, drainage of blood or fluids from ears or nose, loss of coordination or limb weakness, unusually high or low temperature. Eat a light diet for 24 hours, let your child's routine be the same only awaken every 2 hours for first 24 hours.

☐ 7.   BACK OR NECK INJURIES: Rest on firm bed (board under mattress or mat on the floor). Apply heat (heating pad, warm compress, tub bath) 2-3 times daily. If discomfort persists over 72 hours, see your family physician.

☐ 8.   EYE INJURY (especially with foreign bodies): Examination by eye specialist in 1-3 days is advisable.

☐ 9.   FEVER: Encourage clear fluids and control with aspirin or aspirin substitute (such as Tylenol, Bufferin, Anacin, etc., Tempra is suggested for children). Use tepid water sponging as advised.

☑ 10.   X-RAY: The preliminary or emergency interpretation, if done by a physician who is not a radiologist, will be reviewed in detail by the hospital radiologist who makes the final interpretation of all x-rays.

☑ 11.   APPOINTMENT: Call tomorrow the following doctor's office for an appointment.
Dr. _Private_          Office Phone: _____

☑ 12.   If your symptoms persist or get worse, return to the Emergency Room.

☑ 13.   FURTHER INSTRUCTIONS: _Dx- neck pain back pain_
_myofascial strain Rx- Flexaril, Naprosyn_
_as indicated by doctor_
_-See primary doctor - Refrain from_
_hazardous activity -Bedrest as needed_
_Garcia_                                   NURSE'S SIGNATURE

**PATIENT'S CERTIFICATION**

I certify that I have read and/or understand the instructions on this page as provided by the physician and I will comply with his orders.

_Oscar Martin_
**PATIENT'S SIGNATURE**

WHITE COPY · MEDICAL RECORDS          YELLOW COPY · PATIENT