```
              UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF TEXAS
                   BROWNSVILLE DIVISION
```

```
OSCAR MARTINEZ-LOPEZ,                    )
                                         )
v.                                       )
                                         )    No. B-04-105
MARC MOORE, FIELD OFFICE DIRECTOR, and   )
TOM RIDGE, SECRETARY, DEPARTMENT OF      )
    HOMELAND SECURITY, and               )
THE UNITED STATES OF AMERICA.            )
                                         )
```

### PETITIONER'S OBJECTIONS TO REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Oscar Martinez-Lopez, through counsel, files the instant Objections to the Report and Recommendation of the United States Magistrate Judge, (herein referenced as the "R&R" and cited as (RR:___).

### TABLE OF CONTENTS

I.     INTRODUCTION ........................................... 1
II.    JURISDICTION ........................................... 1
III.   THE FACTS .............................................. 2
IV.    THE CAUSES OF ACTION ................................... 3
       A. STATUTORY ISSUES RELATING TO RELIEF FROM DEPORTATION. 3
       B. SUBSTANTIVE DUE PROCESS ............................. 5
       C. PROCEDURAL DUE PROCESS
          Lack of "Fair Notice" ............................... 7
       D. BREACH OF CONTRACT AND/OR UNJUST ENRICHMENT ......... 9
       E. EQUAL PROTECTION .................................... 9
       F. INTERNATIONAL LAW AND TREATY OBLIGATIONS ............ 10
V.     THE REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE . 10
       A. RETROACTIVITY UNDER *ST. CYR* ....................... 10
       B. DUE PROCESS ......................................... 11
       C. BREACH OF CONTRACT AND UNJUST ENRICHMENT ............ 12
       D. EQUAL PROTECTION .................................... 13
       E. INTERNATIONAL LAW ................................... 13
VI.    CONCLUSION ............................................. 15
CERTIFICATE OF SERVICE ........................................ 16

### TABLE OF AUTHORITIES

#### CASES

*Arce v. Walker*,
    139 F.3d 329 (2nd Cir. 1998) . . . . . . . . . . . . . . . . 7

*Beharry v. Reno*,
    183 F.Supp.2d 584 (E.D.N.Y. 2002), reversed,
    *sub nom Beharry v. Ashcroft*,
    329 F.3d 51 (2nd Cir. 2003)   . . . . . . . . . . . . 10, 13-15

*BMW v. Gore*,
    517 U.S. 559 (1996)   . . . . . . . . . . . . . . . . . . 8, 9

*Board of Regents v. Roth*,
    408 U.S. 564 (1972)   . . . . . . . . . . . . . . . . . . 11

*Bouie v. City of Columbia*,
    378 U.S. 347 (1964)   . . . . . . . . . . . . . . . . . . 8

*Bridges v. Wixon*,
    326 U.S. 135 (1945)   . . . . . . . . . . . . . . . . . . 5

*Diaz-Resendez v. INS*,
    960 F.2d 493 (5th Cir. 1992)   . . . . . . . . . . . . . 11

*Flores-Garza v. INS*,
    328 F.3d 797 (5th Cir. 2003)   . . . . . . . . . . . . . 1

*Fong Haw Tan v. Phelan*,
    333 U.S. 6 (1948)   . . . . . . . . . . . . . . . . . . . 4

*Haitain Refugee Center v. Smith*,
    676 F.2d 1023 (5th Cir. 1982)   . . . . . . . . . . . . 11

*INS v. St. Cyr*,
    533 U.S. 289 (2001)   . . . . . . . . 1, 3, 4, 10, 11, 13, 15

*INS v. Yang*,
    519 U.S. 26 (1996)   . . . . . . . . . . . . . . . . . . 11

*Jones v. Cunningham*,
    371 U.S. 236 (1963)   . . . . . . . . . . . . . . . . . . 1

*Jordan v. DeGeorge*,
    341 U.S. 223 (1951)   . . . . . . . . . . . . . . . . . . 3, 7

*Landgraf v. USI Film Prods.*,
    511 U.S. 244 (1994)   . . . . . . . . . . . . . . . . . . 4

*Landon v. Plasencia*,
    459 U.S. 21 (1982)   . . . . . . . . . . . . . . . . . . 5

*Local Union No. 948 v. NLRB*,
    697 F.2d 113 (6th Cir. 1982) . . . . . . . . . . . . . . . . 9

*M.L.B. v. S.L.J.*,
    117 S.Ct. 555 (1996) . . . . . . . . . . . . . . . . . . . . 5

*Mahadeo v. Reno*,
    226 F.3d 6 (1st Cir. 2000) . . . . . . . . . . . . . . . . . 2

*Moore v. City of East Cleveland*,
    431 U.S. 494 (1977) . . . . . . . . . . . . . . . . . . . . 5

*Nicholson v. Williams*,
    203 F.Supp.2d 153 (E.D.N.Y. 2002) . . . . . . . . . . . . . 6

*NLRB v. International Brotherhood of Electrical Workers*,
    773 F.2d 746 (6th Cir. 1985) . . . . . . . . . . . . . . . . 9

*NLRB v. Local 542 Int'l Union of Operating Eng'rs.*,
    485 F.2d 387 (3d Cir. 1973) . . . . . . . . . . . . . . . . 9

*Pequeno-Martinez v. Trominski*,
    281 F.Supp.2d 902 (S.D.Tx. 2003), *aff'd, sub nom*
    *Calderon-Terrazas v. Ashcroft*, No. 03-41318
    (5th Cir. 2004)  . . . . . . . . . . . . . . . . . . . . . . 1

*Ponnapula v. Ashcroft*,
    373 F.3d 480 (3rd Cir. 2004) . . . . . . . . . . . . . . 5, 13

*Reno v. American-Arab Anti Discrimination Committee*,
    525 U.S. 471 (1999) . . . . . . . . . . . . . . . . . . . . 7

*Salazar-Regino v. Trominski, et al*,
    CA B-02-045 (S.D.Tx 2003)
    No. 03-41492 (5th Cir. pending)  . . . . . . . . . . . . . . 1

*Shaffer v. Heitner*,
    433 U.S. 186 (1977) . . . . . . . . . . . . . . . . . . . . 8

*Stanley v. Illinois*,
    405 U.S. 645 (1972) . . . . . . . . . . . . . . . . . . . . 5

*Thom v. Ashcroft*,
    369 F.3d 158 (2nd Cir. 2004) . . . . . . . . . . . . . . 4, 5

*U.S. v. Copeland*,
    376 F.3d 61, (2nd Cir. 2004) . . . . . . . . . . . . . . . 11

*Zalawadia v. Ashcroft,*
    371 F.3d 292 (5th Cir. 2004) . . . . . . . . . . . . . . . 12

**STATUTES**

28 U.S.C. §1331 . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. §1346(a)(2) . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. §1367 . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. §2241 . . . . . . . . . . . . . . . . . . . . . . . 2, 10

8 U.S.C. §1182(c) ("§212(c)") . . . . . . . . . . 1, 3-7, 9, 10, 13

8 U.S.C. §1229b(a) . . . . . . . . . . . . . . . . . . . . . . . 6

8 U.S.C. §1252(a)(2)(C) . . . . . . . . . . . . . . . . . . . . . 1

**OTHER AUTHORITIES**

Federal Rules of Civil Procedure,
    Rule 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . 1

Morawetz, Nancy
    "Rethinking Retroactive Deportation Laws
    and the Due Process Clause," NYU Law Rev.,
    Vol 73, No. 1, April 1998 . . . . . . . . . . . . . . . . . 7

## I.   INTRODUCTION

The case at bar challenges the conclusion that Petitioner is ineligible for relief pursuant to (prior) §212(c) of the Act. In addition to the constitutional questions raised in the Salazar-Regino series, B-02-045, (No. 03-41492, 5th Cir. pending), it raises two questions of first impression in this judicial circuit, to wit, whether, under *INS v. St. Cyr,* 533 U.S. 289 (2001) the time restrictions on §212(c) relief imposed by the 1990 amendments (IMMACT90) properly apply to offenses committed prior to enactment, and whether an LPR who exercised his constitutional right to trial by jury can claim the protection of the Court's holding in *St. Cyr.*

## II.   JURISDICTION

Petitioner Oscar Martinez is under an administratively final order of removal, (Petitioner's Exhibit A). At the time his petition was filed, he was also under an Order to report for deportation on July 9, 2004. (Petitioner's Exhibit B). In light of these orders, he was clearly "in custody" for habeas purposes because said orders placed significant restrictions on his liberty not shared by the populace at large, within the meaning of *Jones v. Cunningham,* 371 U.S. 236,240 (1963). The instant case raises issues over which the Fifth Circuit would not have jurisdiction under 8 U.S.C. §1252(a)(2)(C), *i.e.,* eligibility for relief from removal. *See, Flores-Garza v. INS,* 328 F.3d 797 (5th Cir. 2003); *Pequeno-Martinez v. Trominski,* 281 F.Supp.2d 902,909-914 (S.D.Tx. 2003). Petitioner further asserts that jurisdiction over his complaint for injunctive and declaratory relief is appropriate under 28 U.S.C. §1331 (federal question); §1346(a)(2) (action against an agency, and/or officers of the U.S.), and §1367 (supplemental jurisdiction).

Respondents urge that the Court lacks subject matter jurisdiction, and that the case should be dismissed under Rule 12(b)(1), Federal Rules of Civil Procedure. Their argument does not support this

claim.[1]  Respondents do not contest that Mr. Martinez was "in custody" for habeas purposes when the instant action was filed.  He has raised statutory and constitutional issues, relating to relief from removal.  Indeed, Respondents apparently misunderstood the issue of the retroactive application of IMMACT90, which they incorrectly characterize as a claim that the 1996 amendments to the Act were improperly applied retroactively.  And, contrary to the conclusion of the United States Magistrate Judge, Mr. Martinez can, indeed, prove a set of facts which would entitle him to relief.

### III.  THE FACTS

Oscar Martinez is a 52 year old native and citizen of Mexico.  He has resided in the U.S. for thirty years, and became a permanent resident on or about May 9, 1983.  He has been disabled since 1997, but chose not to seek disability benefits so as not to become a public charge.  Rather, he ekes out a living as best he can.  His entire family is lawfully in the United States, and he no longer has anyone in Mexico.  Given his poor health, and advanced age, it would be virtually impossible for him to support himself in Mexico.

Following a jury trial, Mr. Martinez was convicted in 1991 of conspiracy to possess, with intent to distribute, more than 100 kilograms of marijuana, which offense was concluded on May 5, 1990, and was sentenced to 85 months in prison.  He had been offered a plea bargain which would have netted him approximately eight to twelve months, but chose to exercise his constitutional right to trial by jury on the advice of counsel, who assured him that he could win an acquittal, and mentioned nothing about any potential immigration consequences of losing the case.

---

[1] *See, e.g., Mahadeo v. Reno,* 226 F.3d 6 (1st Cir. 2000) (Petitioner's habeas petition was denied for lack of subject matter jurisdiction. On appeal, the court vacated the denial of the habeas petition. IIRIRA's permanent rules lacked a clear statement of intent to repeal 28 U.S.C. §2241 habeas jurisdiction).

On June 12, 1997, shortly after the effective date of IIRIRA, INS issued a Notice to Appear, alleging that Mr. Martinez had been convicted of an aggravated felony, and of an offense involving a controlled substance. The Judge found the charges to be sustained, and Mr. Martinez sought relief under §212(c) of the Act. On June 6, 2003, an Immigration Judge in Harlingen, Texas, found Mr. Martinez removable on both charges, and further found that he was ineligible for any form of relief. Mr. Martinez filed a timely appeal to the Board of Immigration Appeals, which on May 13, 2004, affirmed, without opinion, the Decision of the Immigration Judge.

## IV.  THE CAUSES OF ACTION

Petitioner asserts that the deprivation of liberty complained of herein violates the laws and Constitution of the United States, as well as international law and treaty obligations with his native country of Mexico, which claims are cognizable in habeas corpus.

### A. STATUTORY ISSUES RELATING TO RELIEF FROM DEPORTATION

Mr. Martinez contends that, under *INS v. St. Cyr, supra,* it was error to conclude that the 1990 amendments precluding relief to one who served more than five years in prison, applied retroactively to cover offenses committed prior to enactment, and that said interpretation would render the statute void for vagueness as applied. *See, Jordan v. DeGeorge,* 341 U.S. 223, 230-31 (1951):

> This Court has repeatedly stated that criminal statutes which fail to give due notice that an act has been made criminal before it is done are unconstitutional deprivations of due process of law.... It should be emphasized that this statute does not declare certain conduct to be criminal. Its function is to apprise aliens of the consequences which follow after conviction and sentence of the requisite two crimes.
>
> Despite the fact that this is not a criminal statute, we shall nevertheless examine the application of the vagueness doctrine to this case. We do this in view of the grave nature of deportation. The Court has stated that 'deportation is a drastic measure and at times the equivalent of banishment or exile * * *. It is the forfeiture for misconduct of a residence in this country. Such a forfeiture is a penalty.' ... We shall,

3

>therefore, test this statute under the established criteria of the 'void for vagueness' doctrine.

Mr. Martinez also urges that the alternative reason for finding him ineligible for a waiver under former §212(c) of the Act was also erroneous. The LPR in *St. Cyr* pled guilty, while Mr. Martinez was found guilty, following a jury trial. While the possibility that an LPR mighty rely on the availability of §212(c) relief in deciding to plead guilty underlay the Court's reasoning in *St. Cyr*, the **holding** of the case was that Congress did not state with sufficient specificity that the repeal of §212(c) was retroactive to overcome the presumption that new statutes are not applied retroactively. The Court found retroactive effect, and concluded that Mr. St. Cyr was eligible for §212(c) relief. If the repeal of §212(c) was not retroactive, such relief must therefore be available regardless of whether one pled guilty, or, as here, exercised his constitutional right to a trial by jury. The possibility of genuine retroactive effect is a global issue, not one which is be determined on a case-by-case basis. Alternatively, even on a case-by-case basis, Mr. Martinez could show genuine retroactive effect. As Circuit Judge Calabresi opined, in his dissent in *Thom v. Ashcroft*, 369 F.3d 158, 163,n.6 (2nd Cir. 2004):

>Speaking only for myself: If I were judging on a clean slate, I would read the Supreme Court's seminal decision on civil retroactivity, *Landgraf v. USI Film Prods.*, 511 U.S. 244, 128 L. Ed. 2d 229, 114 S. Ct. 1483 (1994)-at a minimum-to say that, where Congress has not made its intent clear, courts should presume that any civil statute that would be considered *ex post facto* in the criminal context was meant to apply prospectively only. (This reading would be particularly appropriate in cases where, as here, the civil law in question imposes consequences very like those of criminal penalties. *See, e.g., Fong Haw Tan v. Phelan*, 333 U.S. 6, 10, 92 L. Ed. 433, 68 S. Ct. 374 (1948) ("Deportation is a drastic measure and at times the equivalent of banishment or exile.").) Indeed, I believe *Landgraf* goes even further and that its anti-retroactivity presumption is triggered by statutes whose retroactive application, while not the equivalent of criminal *ex post facto,* nevertheless would run afoul of "familiar considerations of fair notice, reasonable reliance, and settled expectations." *Landgraf*,

> 511 U.S. at 270. And, I would expect that the Supreme Court's future decisions in this field will confirm such readings of *Landgraf*. I would, therefore, be very much inclined to agree with the dissent that the IIRIRA and the AEDPA do not bar Petitioner from 212(c) relief. I would be so inclined, that is, were it not for the fact that I am unconvinced by the dissent's ingenious interpretation of *Domond v. INS*, 244 F.3d 81 (2d Cir. 2001), and *Rankine*, 319 F.3d 93. Instead, I read those cases as foreclosing the argument that the conviction of an alien, without more, presents a retroactivity problem.

Here, there is more: Mr. Martinez suffered genuine retroactive effect. When he decided to go to trial, he was eligible for §212(c) relief, and had no reason to believe that his failure to plead guilty, and/or the possibility that if he were found guilty, and thereafter spent more than five years in prison, would divest him or all possibility of relief. And although it is impossible to state with certainty what he would have done, had these legal developments already occurred, and had this information been made available to him, in the absence thereof, he had no reason to forego his constitutional right to trial by jury, particularly given his counsel's assurances that he would be acquitted. *See also, Ponnapula v. Ashcroft,* 373 F.3d 480,494 (3rd Cir. 2004).

### B. SUBSTANTIVE DUE PROCESS

As a permanent resident, Mr. Martinez has a fundamental liberty interest in being able to live and work in the United States, and in remaining here with his family. *See, Landon v. Plasencia,* 459 U.S. 21,34 (1982), citing *Bridges v. Wixon,* 326 U.S. 135, 154 (1945); *Moore v. City of East Cleveland*, 431 U.S. 494,499 (1977), and *Stanley v. Illinois*, 405 U.S. 645, 651 (1972):

> Plasencia's interest here is, without question, a weighty one. She stands to lose the right "to stay and live and work in this land of freedom," ... Further, she may lose the right to rejoin her immediate family, a right that ranks high among the interests of the individual. ...

*Moore* and *Stanley* are both fundamental rights cases, involving family relationships. *Stanley* struck down a conclusive presumption similar to that involved herein, and *Moore* simply concluded that

5

the interest advanced by the State was insufficient to justify the particular intrusion into the family unit. As a lawful permanent resident, Mr. Martinez enjoys the same Due Process rights, including substantive Due Process rights, to develop and enjoy intimate family relationships in the United States.

Mr. Martinez asserts that the combination of provisions enacted by IMMACT90 and IIRIRA, including the limitation on §212(c) relief for those who have spent five years or more in prison, together with the repeal of §212(c), and its replacement with 8 U.S.C. §1229b(a), which contains an absolute prohibition on granting discretionary relief to anyone convicted of an "aggravated felony," and the overly expansive definition of what constitute such "aggravated felonies," constitutes an unconstitutional "conclusive presumption" that all LPRs who have been convicted of any offense in that list are unworthy of being able to stay with their families in the U.S. Similarly, by failing to permit any showing of countervailing equities, these provisions are unjustifiable, as they are not sufficiently narrowly tailored to meet a compelling state interest. *See, Nicholson v. Williams,* 203 F.Supp.2d 153,220-21 (EDNY 2002):

> Substantive due process comes into play where, regardless of the procedures followed, a governmental decision or action is so contrary to a fundamental right that it cannot be countenanced. *See Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (Substantive due process rights bar "certain government actions regardless of the fairness of the procedures used to implement them ...."). Substantive due process depends upon the outcome itself. [2]

The Substantive Due Process argument is particularly strong where, as here, Mr. Martinez has paid his taxes, and contributed to the Social Security and Medicare funds for many years, and will soon depend on the return of these payments for his very survival. *See,*

---

[2] Although *Nicholson* involved the removal of children from the parent, rather than, as would occur in the case at bar, the removal of the parent from the child, the principles are the same.

Exhibit C, incorporated herein.

### C. PROCEDURAL DUE PROCESS
### Lack of "Fair Notice"

Mr. Martinez also asserts that the removal Order deprives him of Procedural Due Process. At the time of the offense, he was eligible for §212(c) relief. Had he known, or even guessed, that he would lose his eligibility unless he pled guilty, and spent fewer than five years in prison, he would definitely have done so, since deportation, and permanent separation from his family, is, to him, a far more serious consequence any amount of time in prison.

Although not "punishment" for a criminal offense, deportation has long been recognized as a "penalty." *See, Reno v. American-Arab Anti Discrimination Committee,* 525 U.S. 471, 497-98 (1999), Justice Ginsberg, concurring in Part I and the result:

> As this Court has long recognized, "[t]hat deportation is a penalty - at times a most serious one - cannot be doubted." *Bridges,* 326 U.S., at 154, 65 S.Ct. 1443; see also *ibid.* (Deportation places "the liberty of an individual ... at stake.... Though deportation is not technically a criminal proceeding, it visits a great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom.")

Deportation then becomes an additional penalty, retroactively attached to the criminal offense by subsequent legislation, and/or by new interpretations of the various statutes involved. [3]

Therefore, the 1990 and 1996 amendments which render Mr. Martinez statutorily ineligible for §212(c) relief are unconstitutional as interpreted and applied herein. They retroactively make qualitative changes in the penalty imposed, in a wholly unexpected manner. *See,* Nancy Morawetz, "Rethinking Retroactive Deportation Laws and the Due Process Clause," NYU Law Rev., Vol 73, No. 1, April 1998. *See also, Arce v. Walker*, 139 F.3d 329,333-34 (2nd Cir. 1998):

> [T]he Due Process Clause protects against restraints or

---

[3] This is very similar to, and is reinforced by, the "void for vagueness" analysis of *Jordan v. DeGeorge, supra.*

> conditions of confinement that "exceed[ ] the sentence in ... an unexpected manner." *Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300; *see id.* at 479 n. 4, 115 S.Ct. at 2297 n. 4 (observing that proscribed conditions of confinement must be "qualitatively different from the punishment characteristically suffered by a person convicted of crime, and [have] stigmatizing consequences." (citation and internal quotation marks omitted)); *see, e.g., Vitek v. Jones,* 445 U.S. 480, 493, 100 S.Ct. 1254, 1264, 63 L.Ed.2d 552 (1980) (holding that "involuntary commitment to a mental hospital is not within the range of conditions of confinement to which a prison sentence subjects an individual"); *Washington v. Harper,* 494 U.S. 210, 221-22, 110 S.Ct. 1028, 1036-37, 108 L.Ed.2d 178 (1990) (holding that inmate has a liberty interest under the Due Process Clause to refuse the involuntary administration of psychotropic drugs).

These protections exist even though deportation, a civil penalty, rather than criminal punishment, is involved. As held in *BMW v. Gore*, 517 U.S. 559, 574 (1996) (footnote 22 in original):

> Elementary notions of fairness enshrined in this Court's constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment but also of the severity of the penalty that a State may impose. FN22
>
> FN22. See *Miller v. Florida,* 482 U.S. 423 ...(1987) (*Ex Post Facto* Clause violated by retroactive imposition of revised sentencing guidelines that provided longer sentence for defendant's crime); *Bouie v. City of Columbia,* 378 U.S. 347... (1964) (retroactive application of new construction of statute violated due process); *id.,* at 350-355, 84 S.Ct., at 1701-1703 (citing cases); *Lankford v. Idaho,* 500 U.S. 110 ... (1991) (due process violated because defendant and his counsel did not have adequate notice that judge might impose death sentence). The strict constitutional safeguards afforded to criminal defendants are not applicable to civil cases, but the basic protection against "judgments without notice" afforded by the Due Process Clause, *Shaffer v. Heitner,* 433 U.S. 186, 217... (1977) (STEVENS, J., concurring in judgment), is implicated by civil *penalties.*

For an LPR such as Mr. Martinez, there is no question but that deportation is a "civil penalt[y]" imposed as a result of his "conviction. It therefore violates Due Process, as a retroactive

application of a new statute, as in *Bouie v. City of Columbia*. It imposes a "civil penalt[y]" without prior notice, as in *Shaffer v. Heitner*. And, as in *BMW v. Gore*, it confounds "[e]lementary notions of fairness" which "dictate that a person receive fair notice not only of the conduct that will subject him to punishment but also of the severity of the penalty" that may be imposed.

### D. BREACH OF CONTRACT AND/OR UNJUST ENRICHMENT

Mr. Martinez also claims that a natural and foreseeable consequence of these provisions is to deprive long-term LPRs such as he of the return on the monies paid into their Social Security and Medicare accounts, on the basis of a single error that has no bearing on the purpose of these programs. It is a "'long-enduring legal maximum that a party is presumed to intend the natural, foreseeable consequences of its acts.'" [*Local Union No. 948 v. NLRB*, 697 F.2d 113, 116 (6th Cir. 1982)] at 117 n.7 (quoting *NLRB v. Local 542, 542-A & 542-B, Int'l Union of Operating Eng'rs*., 485 F.2d 387, 392 (3d Cir. 1973)), as quoted in *NLRB v. International Brotherhood of Electrical Workers, Local 575,* 773 F.2d 746,749 (6th Cir. 1985). See also, United States v. Texas Education Agency, 579 F.2d 910, 913 (5th Cir. 1978) ("an actor is held to intend the reasonably foreseeable results of his actions."). Thus it must be presumed that Congress intended that even a single conviction such as involved herein would result in forfeiture of all Social Security and Medicare benefits, even for long-term LPRs, and notwithstanding a lifetime of productive and law-abiding behavior and payments into these programs, and that this forfeiture would occur regardless of whether it would deprive the person of the very means of survival. This violates the implicit social contract underlying these programs, and results in unjust enrichment for the United States.

### E. EQUAL PROTECTION

Mr. Martinez also contends that it violates Equal Protection to make §212(c) waivers available to otherwise similarly situated LPRs who pled guilty to an offense, but not to one who exercised his constitutional right to trial by jury.

9

F.  INTERNATIONAL LAW AND TREATY OBLIGATIONS

Finally Mr. Martinez urges that removal would violate international law. *See Beharry v. Reno,* 183 F.Supp.2d 584 (E.D.N.Y. 2002) (Where a statute appears to contradict international law, an appropriate remedy is to construe it so as to resolve the contradiction).[4]

V.  THE REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE
    A.  RETROACTIVITY UNDER *ST. CYR*

In his Report and Recommendation, the Magistrate Judge declined to confront the question of whether *St. Cyr* applied to those who, like Mr. Martinez, exercised their Constitutional right to trial by jury, after having rejected a plea bargain which would have resulted in a sentence of less than five years, at a time when they were eligible for §212(c) relief. The Magistrate Judge opined that it was not necessary to reach this question, since he considered that the case could be resolved on a different basis. (R&R:4):

> As the Supreme Court notes in *St. Cyr,* Congress amended §212(c) in 1990 "to preclude from discretionary relief anyone who had served a term of imprisonment of at least five years." 533 U.S. at 297 (citing § 511, 104 Stat. 5052 as amending 8 U.S.C. § 1182(c)). Petitioner's commission of an aggravated felony, for which he subsequently served more than five years in prison, occurred in 1991, after the 1990 amendment. Thus, Petitioner would *not* have been eligible for § 212(c) relief under the law at the time of his conviction and the retroactivity concerns raised by the Supreme Court's decision in *St. Cyr* are not relevant to Petitioner's case. 533 U.S. at 326.

The flaw in this argument lies in the fact that, at the time of Petitioner's conviction, he had not served *any* time and was in fact

---

[4] *Beharry* concluded that relief was available where an offense was committed before IIRIRA, but the plea occurred after enactment. It was reversed, *sub nom Beharry v. Ashcroft,* 329 F.3d 51 (2nd Cir. 2003), for failure to exhaust administrative remedies, by raising the international law issue with the Immigration Judge or the BIA. Petitioner urges that, given that habeas jurisdiction under §2241 is independent of statutory review, exhaustion is not required.

eligible for §212(c) relief. Further, it is the time of the plea, (or in this case, the rejection of the proffered plea bargain, and decision to exercise one's constitutional right to a jury trial), which determines whether there is genuine retroactive impact.

### B.   DUE PROCESS

The issue of whether LPRs can complain of Due Process violations in the denial of discretionary relief has not been definitively settled. Whether there exists a constitutionally protected interest in such relief depends on the existence of standards governing the exercise of discretion. In *Board of Regents v. Roth,* 408 U.S. 564,577 (1972), the Court held that interests in discretionary benefits were constitutionally protected where rules and standards governed the exercise of discretion. *See also, INS v. Yang,* 519 U.S. 26,32 (1996) (previously "unfettered" discretion may be restricted by settled course of adjudication). No such rules, standards, or "settled course of adjudication" exist in the type of relief sought in *Assaad v. Ashcroft,* 378 F.3d 471 (5th Cir. 2004).

By contrast, the pertinent factors and procedure for evaluating them are well established for §212(c) relief. *See, INS v. St. Cyr*, 533 U.S. 289, 296 (2001) (emphasis added) (describing BIA's standards as "*comparable to common-law rules* for deciding when deportation is appropriate"); *Diaz-Resendez v. INS,* 960 F.2d 493 (5th Cir. 1992) (emphasis added) (BIA's discretionary denial of §212(c) relief was "arbitrary and *beyond the pale of its discretion*..."). Further, no hearing was held on Petitioner's application, whereas Mr. Assaad's was denied on the merits. *See U.S. v. Copeland*, 376 F.3d 61,72 (2nd Cir. 2004) (distinguishing between "a right to seek [§212(c)] relief and the right to that relief itself," and finding that the former exists, even though the relief is discretionary). *Accord, Haitian Refugee Center v. Smith*, 676 F.2d 1023,1039 (5th Cir. OLD 1982) (footnotes omitted):

> We concede that the right we find is but a fragile one. There is no constitutionally protected right to political

> asylum itself. Although fragile, the right to petition is nevertheless a valuable one to its possessor. By it he may at least send his message and be assured of the ear of the recipient. Whether this minimal entitlement be called a liberty or property interest, we think it is sufficient to invoke the guarantee of due process.

Moreover, it would be hard to rationalize a limitation on the Great Writ which permitted it to reach errors of law, but not constitutional violations.

### C. BREACH OF CONTRACT AND UNJUST ENRICHMENT

In rejecting Mr. Martinez' claims of breach of contract and unjust enrichment, the Magistrate Judge first opined that "neither claim is cognizable in a habeas corpus action," (R&R:5). True. But it was for this very reason that Mr. Martinez styled his pleading as *both* a petition for habeas corpus, *and* a complaint for declaratory and injunctive relief. As stated therein, [Dkt. 1, at page 1]:

> In light of the recent decision in *Zalawadia v. Ashcroft*, No. 03-30015 (5th Cir. June 4, 2004), apparently limiting the remedies available in habeas corpus, Mr. Martinez also files the instant action as a complaint for injunctive and declaratory relief.

Nor is there a "logical" connection between the payment of one's Social Security and Medicare taxes, and the withholding of the benefits to which one reasonably expects that the payment of those taxes assures because one has been found guilty of a criminal offense. U.S. citizens convicted of such crimes, or even lawful permanent residents who had the "good fortune" to be convicted before the changes in the law, are not "punished" by being stripped of their old-age retirement and health benefits. And "unjust enrichment" perfectly describes a situation where our government collects taxes for the lifetime of an individual, with the understanding that the payment of those taxes will assure that person a minimal degree of financial security in his old age, and then reneges on that understanding for wholly unrelated reasons.

12

### D. EQUAL PROTECTION

The legal analysis of the Supreme Court in *St. Cyr* was that since Congress had not clearly expressed an intent to apply IIRIRA § retroactively, the determination of whether it would be so applied rested on whether it would have genuine retroactive impact. The determination that it would have such impact derived from the possibility of reliance on the availability of such relief in making the determination of whether to go to trial, or accept a plea bargain. *See, Ponnapula v. Ashcroft, supra.* The fact that the State may have gained more benefit from the guilty plea than from a decision to go to trial does not change the fact that there can be genuine retroactive impact in both instances. And the fact that one group pled guilty, while the other went to trial, has no relevance to the purpose of §212(c) relief.

### E. INTERNATIONAL LAW

Finally, the Magistrate faults Petitioner for lack of specificity with respect to his international law claim, and concludes that no "international laws or treaties would be violated" by Petitioner's deportation, (R&R:7). While not identifying the international law authorities, by name, Petitioner did so by reference to *Beharry v. Reno, supra.* As concluded therein, 183 F.Supp.2d at 603-04:

> IV. Application of Law to Facts
>
> A. Relief Under the Immigration and Naturalization Act
>
> Petitioner is ineligible for relief under a narrow and wooden construction of the INA. As an aggravated felon (as now defined), he would not qualify for relief under section 212(h), section 240A, or for asylum under section 208. Because his plea came after the 1996 Acts, he would not be eligible-at least as the appellate cases have so far indicated-for section 212(c) relief. Petitioner would not qualify for section 243(h) relief because he is not a member of a protected class under that section. Even if he were a member of a 243(h) class, his "serious" crime would now preclude relief under that section.
> Petitioner admits that section 212(h) is inapplicable in terms of its own language, but asserts that the denial of

13

212(h) relief to long-time lawful permanent residents who are technically "aggravated felons" under the new, current definition of this term violates the equal protection clause. The court declines at present to address this claim because it is unnecessary to do so. See also Barton v. Ashcroft, 171 F. Supp. 2d at 92 (holding in abeyance this issue, because "it would be prudent to grant Respondents' request that this Court hold in abeyance a decision on this specific issue pending the outcome of the appeal in Jankowski").

*B. Relief Under the International Covenant on Civil and Political Rights*

The "ICCPR prevents a nation from separating families in a manner that, while in accordance with its domestic law, is nonetheless unreasonable and in conflict with the underlying provisions of the ICCPR." Maria, 68 F. Supp. 2d at 232. The Maria decision was not reversed; the holding was approved on other grounds in separate Second Circuit and Supreme Court cases. St. Cyr v. I.N.S., 229 F.3d 406 (2d Cir. 2000), aff'd sub nom  I.N.S. v. St. Cyr, 533 U.S. 289, 121 S. Ct. 2271, 150 L. Ed. 2d 347 (2001).

While the ICCPR is non-self-executing, provisions of non-self-executing treaties have been employed before by both this court and the court of appeals for the second circuit. See discussion supra Part III.C.1 (noting that McElroy, Filartiga and Toscanino opinions rely on provisions of non-self-executing treaties).

Summary deportation of this long term legal alien without allowing him to present the reasons he should not be deported violates the ICCPR's guarantee against arbitrary interference with one's family, and the provision that an alien shall "be allowed to submit the reasons against his expulsion. "The statute should be interpreted in a way not inconsistent with international law to permit a compassionate hearing. The Charming Betsy, 6 U.S. at 118. Interpreting the statute in conformity with the ICCPR will also remedy any possible incompatibility with the Universal Declaration of Human Rights, which prohibits "arbitrary... exile", UDHR Art. 9, and also requires that parties be allowed a full and fair hearing. UDHR, Art. 10. See also supra Part IIIC.2.B (rights under UDHR).

*C. Relief Under Customary International Law*

As noted above, the CRC, because of its broad acceptance,

14

> collects and articulates customary international law. It is a codification of now longstanding, uniformly-accepted legal principles. If read as the government suggests, the INA would violate the principles of customary international law that the best interests of the child must be considered where possible. Categoric denial of a hearing and thus of any consideration of the child's interests in all cases of theft where the sentence exceeds a year is not in compliance with that international mandate.
> It is not disputed that Congress could override this norm of customary international law if it chose to do so. It has not expressed a clear intent to overrule this principle of customary international law which is otherwise binding upon United States courts. "The statutes under which Mr. Beharry is being deported [do] not explicitly authorize the separation of an alien from immediate family members." Amicus Brief at 18. The court construes the statute in conformity with international law, as mandated by the Charming Betsy doctrine.

Mr. Martinez urges that the same authorities, and the same reasoning, apply to his case.

## VI. CONCLUSION

In conclusion, it is urged that Mr. Martinez could, indeed, prove facts which would entitle him to relief. Specifically, that at the time of his decision to forego the plea bargain offered to him, and at the time of his conviction, he was eligible for §212(c) relief, and that application to him of the 5 year restriction would have genuine retroactive effect, within the meaning of *INS v. St. Cyr*, *supra*. He could also prove that the retroactive application of the changes in the law violated his right to Equal Protection, and fair notice, and therefore, to (procedural) Due Process. Finally, he could prove that to separate him from his family, and to deprive him of his Social Security and Medicare benefits, at his age, and in his physical condition, would violate Substantive Due Process, and international law, and would result in unjust enrichment to the United States of America.

It is therefore urged that the Report and Recommendation of the Magistrate Judge not be adopted, and that the relief requested in Mr. Martinez-Lopez' Petition and Complaint be granted.

Respectfully Submitted,

s/
Lisa S. Brodyaga, Attorney
17891 Landrum Park Road
San Benito, TX 78586
(956) 421-3226                           Fed. ID.  1178
(956) 421-3423 (fax)                     Texas Bar 03052800

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing was electronically served on Rene Benavides, AUSA, c/o Steven Schammel, AUSA, on February 23, 2005.


s/ Lisa S. Brodyaga
─────────────────────